## BIERBACH vs. THE GOODYEAR RUBBER COMPANY.

*January 12 — February 7, 1882.*

DAMAGES FOR PERSONAL INJURIES: EVIDENCE. *(1) Injury to business: what proof admissible. (2) Pleading and proof. (3) Weight of evidence as affected by number of witnesses.*

1. In an action for personal injuries to the plaintiff, which disqualified him to give his personal attention to the business which he had previously carried on, where such business consisted in the manufacture and sale of patented and other machines, it was error to admit proof of the average profits of his business while he carried it on, as a basis for estimating his damages, such a basis being of too uncertain and speculative a character.

2. Under a general allegation in the complaint that, by reason of the injuries complained of, plaintiff has been unable to attend to his ordinary business, he may prove what his business is, and the damages he has suffered by reason of his inability to pursue it. *Luck v. Ripon,* 52 Wis., 196.

3. It is error to charge the jury that, "if the witnesses are equally credible, and they so present themselves to the mind of the jury, then the greater number of witnesses on one side or the other would be entitled to the greater weight."

APPEAL from the County Court of *Milwaukee* County.

Action to recover damages for personal injuries. In July, 1880, the plaintiff was passing along the south side of Grand avenue, in the city of Milwaukee, a little west of the Plankinton House, in his wagon, drawn by one horse. He was going east, and a young man with him was driving the horse. At the point indicated, he concluded to return to his place of business from whence he came, and the driver, by his direction, reined the horse out of the line on which he had been going, to the north and towards the center of the avenue, for the purpose of turning around. The horse had been going at a moderate trot, but in process of turning slackened to a walk. The wagon of the defendant company, also drawn by one horse, driven by a servant of the company, followed the wagon of plaintiff a short distance behind. That horse was also going at a moderate trot. Just as the plaintiff's wagon was leaving the line on

which it had been moving east, and a little before it reached a position at right angles with that line, the left forward wheel of defendant's wagon collided with the right hind wheel of plaintiff's wagon, about three inches from the tire. The collision upset the plaintiff's wagon, threw him to the ground, and caused the injuries complained of. Both horses were quiet, gentle and easily governed. There was an unobstructed space of about sixteen feet in width between the point of collision and the curb-stone on the south side of the avenue. The collision occurred during the forenoon. A further statement of the case, and some of the rulings of the court on the trial, will be found in the opinion. In addition to certain special findings, the jury found for the plaintiff, and assessed his damages at $3,000. A motion for a new trial was denied, and judgment was entered pursuant to the verdict; from which the defendant appealed.

For the appellant there was a brief by *E. P. Smith* and *Nath. Pereles & Sons*, his attorneys, and *J. G. Jenkins*, of counsel, and oral argument by *Mr. Smith* and *Mr. Jenkins.* They argued, among other things, 1. That under the pleadings there could be no proof of loss of profits. Van Santv. Pl., 163. Such special damage should be averred with the same particularity as the loss of custom in an action of libel or slander. Folkard's Starkie, 484, note; Townshend on Slander, 542, note. 2. That, independent of the question of pleading, the evidence given was improper. The loss of profits could not be considered as a necessary result of plaintiff's injury; nor could the amount of past profits properly be proven to enable the jury to conjecture what the future might probably be. *Masterton v. Mount Vernon*, 58 N. Y., 395; *Lincoln v. S. & S. R. R. Co.*, 23 Wend., 425; *Blair v. M. & P. du C. Railroad Co.*, 20 Wis., 262; *Wylie v. City of Wausau*, 48 id., 508. The cases of *Shepard v. Milwaukee Gas Light Co.*, 15 Wis., 318; *Richardson v. Chynoweth*, 26 id., 656; *Fry v. Dubuque etc. Railway Co.*, 45 Iowa, 416; *City of Cincinnati*

*v. Evans*, 5 Ohio St., 59½; *Griffin v. Colver*, 16 N. Y., 489; *Simmer v. St. Paul*, 23 Minn., 408; 2 Thompson on Negligence, 1263; *Hammer v. Schœnfelder*, 47 Wis., 455 — are not in conflict with the above rule. In all these cases the defendant knew of the object of the contract broken by him, or that the plaintiff was engaged, or was to engage, in the peculiar business which his wrongful act interrupted or destroyed. 3. That the court erred in its instruction as to the weight of conflicting testimony. The instruction gave negative evidence the same force as positive, and disregarded the maxim, *ponderantur testes non numerantur*. 2 Burrill Dic., 807; Starkie on Evidence (8th ed.), 735.

. For the respondent there was a brief by *Austin & Runkel*, and oral argument by *Mr. Austin*. They contended, *inter alia*, that the instruction as to the weight of testimony was correct. Moak's Underhill on Torts, 321; *Fowler v. Colton*, 1 Pin., 331; *Mercer v. Wright*, 3 Wis., 645; *Moore v. Kendall*, 2 Pin., 99. The court did instruct the jury that it was their province to weigh the evidence *(Wright v. Hardy*, 22 Wis., 348), and gave in addition a further instruction in almost the exact language used and approved in *Saunderson v. Lace*, 2 Pin., 257.

LYON, J. Numerous errors are alleged on behalf of the defendant, but the conclusion we have reached upon two of them renders it unnecessary to pass upon the others.

1. On the trial, the plaintiff testified in his own behalf that, when injured, his business was the manufacturing of machines for cleaning feathers, and another article known as the Bierbach wagon patent, and that he continued in such business for several months after he was injured, when he sold out and gave it up. He also testified in his own behalf, under objection, that his average business was worth from $75 to $100 per month, and that he gave it up because, on account of his injuries, he was unable to attend to it. To the question: "After

you were injured, did you carry on your business for any length of time?" put to him by his counsel, he answered, "Yes, sir; I carried it on, but I did not attend to it but a few months. I got negligent and didn't care, I was in such a condition. But when orders came, my man would attend to them." As a basis for the assessment of damages, proof of the average value of the plaintiff's business while he carried it on was clearly incompetent. It could only be used to enable the jury to estimate therefrom what the future profits would have been had the plaintiff not been injured, and had he continued in the business. Such a basis for the estimate of the future profits of the business in which the plaintiff was engaged, is altogether too uncertain to furnish a safe guide for the verdict of a jury.

In *Masterton v. Mount Vernon*, 58 N. Y., 391, the plaintiff sued a municipal corporation to recover damages for personal injuries caused by a defective highway. It appeared that the plaintiff and his partner were importers and dealers in teas, and had been for many years. The plaintiff made the purchases, which required a high degree of skill. He possessed the requisite skill. Their business was extensive, but there was a great falling off in it because the plaintiff was unable, by reason of the injuries complained of, to make the purchases. Judgment for the plaintiff was reversed because the trial court permitted the plaintiff, testifying in his own behalf, to answer this question: " About what have been your profits, year by year, in that business?" After referring to several cases, and among them to the cases of *Nebraska City v. Campbell*, 2 Black, 590, and *Wade v. Leroy*, 20 How. (U. S.), 34, in which it was held competent for a physician, in an action for personal injuries, to prove the extent of his practice, the court proceeds to say: " In none of these cases is any intimation given that proof may be given as to the uncertain future profits of commercial business, or that the amount of past profits derived therefrom may be shown, to enable the jury to conjecture what

the future might probably be.    These profits depend upon too many contingencies, and are altogether too uncertain, to furnish a safe guide in fixing the amount of damages.    .   .   .    The plaintiff had the right to prove the business in which he was engaged, its extent, and the particular part transacted by him, and, if he could, the compensation usually paid to persons doing such business for others.    These circumstances the jury have a right to consider in fixing the value of his time.    But they ought not to be permitted to speculate as to the uncertain profits of commercial ventures in which the plaintiff, if uninjured, would have been engaged."

The foregoing remarks apply with equal force to this case, and it is believed that they contain a sound exposition of the law of evidence applicable to it.    Substantially the same principle was applied by this court in *Blair v. Mil. & Pr. du C. Railroad Co.*, 20 Wis., 262.    Indeed, the testimony, the admission of which worked a reversal of the judgment in that case, was more direct and specific, and hence less objectionable, than that admitted in the present case.    There the testimony was confined to the damages sustained by the plaintiff's firm by reason of the inability of the plaintiff to give his personal attention to the business, while here the testimony goes to the value of the whole business, when it is apparent that the plaintiff might have continued the business by employing proper agents to carry it on, notwithstanding his injuries. See also *Lincoln v. Railroad Co.*, 23 Wend., 424.

We conclude that it was error to permit the plaintiff to give testimony of the value of his business when he carried it on. In view of the large damages awarded by the jury, it is fair to presume that such testimony materially enhanced the damages.    It is clear that it may have done so.    Hence, the error is material, and fatal to the judgment.

It was also argued on behalf of the defendant, that the testimony, if otherwise competent, was inadmissible under the complaint, because no special damages for loss of or injury to

his business are claimed therein by the plaintiff. It is alleged that by reason of the injuries complained of the plaintiff has been unable to attend to his ordinary business. In *Luck v. City of Ripon*, 52 Wis., 196, this court held that under such general allegation, in an action like this, it is competent for the plaintiff to prove what his business is, and the damages he has suffered by reason of his inability to pursue it.

2. The court, instructing the jury as to the rules for determining the relative weight of conflicting testimony, used this language: "Of course, if the witnesses are equally credible, and they so present themselves to the mind of the jury, then the greater number of witnesses on one side or the other would be entitled to the greater weight." We think the instruction was erroneous. It laid down an arbitrary rule for determining which way the evidence preponderated where there was a conflict of testimony. That is to say, the witnesses being equally credible, disputed propositions of fact should be determined by a count of the witnesses and an application of the majority rule. We are not aware of the existence of any such rule of evidence. Indeed, in *Van Doran v. Armstrong*, 28 Wis., 236, this court substantially held that there is no such rule, but that the jury are free to believe the minority of the witnesses, and a verdict based upon the testimony of such minority will not be disturbed because opposed to the testimony of the majority. The jury alone are to determine not only the credibility of the witnesses, but also the weight which should be given to the testimony of each. The above instruction invaded the province of the jury in that respect, and was an unwarrantable interference with their peculiar and exclusive functions.

There is another fatal objection to the instruction. It ignores every condition but that of credibility, whereas there are other conditions which should be considered in framing a rule on that subject. It makes no distinction between the relative weight of positive and negative testimony — a dis-

tinction well established in the law (3 Greenl. Ev., § 375; *Ralph v. Railway Co.*, 32 Wis., 177), and it takes no account (in terms, at least) of the possible fact that some of the witnesses may have had better facilities for knowing the facts than others, or remembered them more distinctly. The jury may well have understood the word "credible" to refer only to the integrity of the witnesses. But the most serious objection to the instruction is the one first above indicated, to wit, that it invaded the province of the jury, and sought to bind them by a rule unknown in the law. This error was also material, and may have prejudiced the defendant. There was conflicting testimony on material propositions of fact, and some of the testimony hostile to the defendant's theory of the case was negative in its character. Besides, some of the witnesses had better means of knowing the facts to which they testified, than some of the opposing witnesses who testified in relation to the same facts.

Because of the two errors above indicated, the judgment of the county court must be reversed, and the cause remanded for a new trial.

*By the Court.*— So ordered.