ROBERT M. TODD and others *vs.* MINNEAPOLIS & ST. LOUIS RAILWAY COMPANY.

September 4, 1888.

**Damages for Obstructing Street—Loss of Profits in Business—Evidence.**—The plaintiffs were engaged in buying wheat at a warehouse owned by them on the line of the defendant's railway, for manufacturing into flour at their mill, to which the wheat was shipped, and in selling the products of the mill at the same warehouse, and, while so engaged, and for a considerable time, their business was interrupted and interfered with by the obstruction of a street leading to the same by the unlawful occupation thereof with the defendant's cars and trains. *Held* that, in estimating plaintiffs' damages caused by such obstructions, evi-

dence of the diminution of the profits of their business, simply including the manufacture of flour, was incompetent, as embracing too many elements of uncertainty to form a basis for estimating damages.

Appeal by defendant from an order of the district court for Freeborn county, *Farmer*, J., presiding, refusing a new trial after a verdict of $2,764 for plaintiffs.

*B. S. Lewis*, for appellant.

*Lovely, Morgan & Morgan*, for respondents.

VANDERBURGH, J.   The plaintiffs claim damages for alleged injuries arising from the diminution and interruption of the business of their warehouse for a year or more prior to about August 1, 1882, by reason of the unlawful obstruction of a highway or street, leading across the depot grounds of defendant, with its cars and trains, thus preventing access thereto by the public.   For about the space of two years prior to October 1, 1881, the plaintiffs owned and operated a warehouse situated on one of the railway tracks of the defendant, and westerly and adjoining its depot grounds and yard, at Albert Lea, in this state, and were engaged in the business of buying and shipping wheat, and selling flour and feed.   It was built upon ground leased of the defendant; and plaintiffs allege that the defendant had previously dedicated and laid out for the use of the public the street in question across its depot grounds, extending to the location of plaintiffs' warehouse, and communicating directly with one of the principal streets of the city, and thereby furnishing the only practicable and available way of approach and access to their warehouse for farmers bringing their wheat to market, and for purchasers of flour and feed.   It is alleged that the street was kept open by defendant, and not seriously obstructed, till about the 1st of October, 1881, and that thereafter, and until about August 1, 1882, the defendant permitted the same to be unlawfully occupied by trains and cars standing thereon, resulting in a serious interruption of travel over the street, and a great hindrance and damage to plaintiffs' business; and that at the last the defendant proceeded to erect a gate across the street, and to occupy it with additional tracks laid over the same, so that the plaintiffs were obliged to remove their warehouse to the opposite side of the depot grounds.

Assuming that there was evidence in the case tending to establish the dedication and opening of the street as a highway for the use of the plaintiffs and the public, and also the fact that the street was unnecessarily or unwarrantably obstructed by the defendant in the operation of its trains and by standing cars, the principal remaining question in the case is whether, in addition to the necessary expenses of removing their warehouse and the value of its use until re-established, the plaintiffs were also entitled to recover under the evidence for the loss of the profits of their business during the time it is alleged to have been hindered and interrupted. The plaintiffs were also proprietors of a flour-mill situated a few miles away on the line of another railroad, connecting at Albert Lea with the defendant's road, and the purchases of wheat at the latter place were wholly for shipment to their mill, to be there manufactured into flour, and not to sell again; and all the flour and feed by them sold at their warehouse was the product of the mill. It was not, however, all shipped to Albert Lea; nor does it appear that the plaintiffs might not or did not purchase wheat for their mill at other stations. The profits of their business, then, would depend upon the cost of the wheat, the expense of manufacturing, the quality of the products, and the price obtained therefor. We are of the opinion that the plaintiffs failed to make a case for the allowance of profits. They were not dealers buying and selling wheat, and buying and selling flour, upon commission or upon their own account. The supplies of grain for their mill were not necessarily or in fact obtained altogether from their warehouse at Albert Lea. And no attempt was made to show what, if any, extra expense was actually incurred in supplying the deficiency, if any, arising out of the diminution in the receipts of grain there. And so, also, as to the alleged falling off in the sales of flour and feed at the warehouse, it does not appear that the products were not all actually sold, nor that they were not finally sold at a profit, or what, if any, loss was occasioned in the delay or diminution of sales. It must also be considered that the wheat market at any particular warehouse must necessarily involve many elements of uncertainty; the delivery of wheat depending upon the price, state of the weather and roads, competition of other dealers,

as well as the question of accessibility.   We think the evidence offered insufficient to establish plaintiffs' loss of profits upon the sales of flour and for the non-delivery of wheat, and that the defendant's requests to that effect should have been given.   The loss of profits was not shown with reasonable certainty.   The facts of this case clearly distinguish it from the cases cited by plaintiffs' counsel.

2. One of the plaintiffs was permitted to testify, against the objection of the defendant, to the entire loss to their business from the cause alleged during the time specified in the complaint; the witness stating that it was the sum of $6,500.   This was error.   The question was one of fact, and not of opinion; and it was one which the jury were to ascertain from facts in evidence sufficient, at least, to base a reasonably safe conclusion upon as to the extent of the damages attributable to the alleged wrongful acts of the defendant.   Nor was this error cured by subsequent explanations and statements of fact by the witness.   They were altogether too indefinite in their character as a basis for the judgment of the jury.   And, as before stated, it did not appear that all the products of the mill were not sold, or, if sales were delayed, that they were not finally sold at a profit, or that the diminution in the shipments of wheat was not made up by purchases at other stations or warehouses, or what commissions were required to be paid for extra supplies for the mill.   From the complicated nature of the business, it might indeed be difficult for a witness to find any satisfactory basis for an estimate of the loss of plaintiffs' profits caused by defendant's alleged wrongful acts.

Order reversed.