THE CARBONDALE INVESTMENT COMPANY v. I. D.
BURDICK AND W. H. BURDICK.

No. 10036.

1. SPECULATIVE DAMAGES—*hypothetical "boom" value of town lots not allowed for breach of contract.* Profits upon the sale of town lots at prices beyond their present market value, and which depend for their realization upon the working up of a "boom," and upon the contingencies and uncertainties of the future, are speculative and conjectural in character, and cannot be allowed as damages for the breach of a contract.

2. WRITTEN AGREEMENT—*plain and unambiguous, error to tell jury to consider what parties "contemplated" or "expected."* In an action for, or an offset of, damages by a mortgage debtor against his creditor for the premature institution of a foreclosure suit, and for refusal to release parts of the property from the mortgage lien, where the mortgage contract together with other collateral and contemporaneous written agreements are plain and unambiguous in their terms, it is error to instruct that the jury may take into account what was "contemplated" or "expected" by the parties, as to the way and means by which the debtor was to realize money with which to discharge the mortgage debt.

Error from Lyon District Court. Hon. W. A. Randolph, Judge. Opinion filed October 9, 1897. *Reversed.*

*Chas. B. Graves* and *J. Jay Buck,* for plaintiff in error.

*Waters & Waters* and *Ed. S. Waterbury,* for defendants in error ; *D. Overmyer,* of counsel.

DOSTER, C. J.    March 12, 1889, the plaintiff in error sold and conveyed a tract of eighty acres of land to defendants in error. Contemporaneously with this sale and conveyance, and as a part of the same transaction, the defendants in error executed a note and mortgage to the plaintiff in error for the entire purchase price, $4,672, due in two years from date. The note contained an agreement for the annual pay-

518 INVESTMENT CO. v. BURDICK.

ment of interest. The mortgage stipulated for the payment of taxes on the land by the mortgagors, and declared that the entire debt should become due upon default in the payment of either interest or taxes. As a further part of the same transaction, the parties entered into an agreement, reciting the sale and convey-ance of the land and the execution of the note and mortgage to secure the purchase money, and obligat-ing the defendants in error to plat the tract into lots, blocks, streets, etc., and to make certain improve-ments thereon, and also obligating the plaintiff in error to release the mortgage upon the lots sold upon the payment of twelve dollars as to each of such lots. This agreement referred to the existence upon the land of a well of water of medicinal properties, and it and the other instruments were executed with a view to the development of the place, by the defendants in error, as a health resort.

In April, 1890, the plaintiff in error sued to fore-close the mortgage, alleging default in the payment of taxes and the first year's interest, and the conse-quent maturity of the whole debt. Upon the trial of this suit it was adjudged that, under the circumstan-ces of the case, the claimed defaults had not occurred, and the plaintiff in error was therefore non-suited without prejudice to a future action. It again insti-tuted foreclosure proceedings. To its petition, the de-fendants answered by way of set-off that they had sold a large number of lots, and had tendered the stipu-lated sum of twelve dollars for each of them, but that plaintiff in error had refused to release as agreed, whereby the sales were lost; and also that, in conse-quence of the premature institution of the first fore-closure suit, their title and right to convey lots had been slandered, their ability to make other sales im-paired, and the value of the lots depreciated.

The case was tried to a jury, and a verdict was returned for defendants in error for twenty-five hundred dollars damages, upon which a judgment for such amount and for the cancellation of the note and mortgage was rendered. To review this judgment the present proceeding in error was instituted.

One of the errors claimed is the admission of testimony speculative and conjectural in character in support of the claim for damages through loss of sales and depreciation in values. One of the defendants in error testified as follows :

" Ques. What would you say was the fair and reasonable value of these lots apiece? Ans. About fifty dollars a lot.

" Q. When speaking of the value of lots, fifty dollars a lot as your estimate of the value, do you mean what they might ultimately become worth as the growth and development of the water was fully realized, or what they were worth then on the market? A. What they were worth on the market then.

" Q. And you did n't mean to confine it to just one or two sales, when you might hit a purchaser, but that they were worth that in the sense that wheat would be worth sixty cents on a given day? A. No; it was the inquiry and what it seemed the demand was. The people wanted them and the boom that we expected and thought we were able to get up.

" Q. Some portion of that value was dependent on the boom that you expected to get up? A. Well, yes; the inquiry we had in regard to it.

.    .    .    .    .    .    .    .    .    .

" Q. Why did n't you borrow money on property worth thirty-five thousand dollars, and pay off the forty-six hundred dollars? A. It seemed that we had hold of the wrong end of the string; that is, we have got to create a boom and have got to work up a boom.

" Q. Then this thing depended largely upon a boom and the working up of it, and did n't have any real foundation to it at all, did it? A. We had the bot-

tom and foundation and all it lacked was the disposition of the people to consummate it.

.   .   .   .   .   .   .   .   .   .   .

"Q. Was there a single instance where anybody chased you around and hunted you up to buy one of these lots down there?   A. There were real-estate agents who wrote to me in Carbondale and I went up there and they had a trade for me on the whole thing.

"Q. That was with Haley, wasn't it?   A. Yes sir.

"Q. Do you want to put that in here?   A. Well you are talking about these different things and I have to mention them.

"Q. Are there any other consummated sales than those I have interrogated you about?   A. No, I couldn't get them to take lots in the shape the title was in.   They positively refused.   There were lots of other deals we could have consummated if we could have given title to them."

A witness for defendants in error testified as follows :

"I thought at the time that, if the title of the property could be perfected and all things could be carried out that they had under contemplation, the property was fairly worth about fifty dollars a lot.   I figured it in round numbers at thirty thousand dollars.   My anticipations were fully realized on some property in Kansas from World's Fair people.   I sold one tract of land for fifteen thousand dollars spot cash."

It was also in evidence that defendants in error had advertised the land and the waters on it as a health resort ; had drawn some degree of favorable attention to the curative properties of the water ; had secured the indorsement of its remedial virtues by a medical society, and had made contracts for the sale of lots at prices aggregating between two and three thousand dollars.

As involving the general question of the right to recover damages speculative and contingent in charac-

ter, the plaintiff in error requested the following instructions:

"You cannot award any damages to the defendants on account of any supposed value which might have been given to the premises in controversy by a boom which defendants *expected to create* by advertising the virtues of the mineral waters claimed to be on said lands, and which depended upon *uncertain contingencies, which might or might not occur*, for such damages are remote, uncertain and speculative.

"All the damages claimed by the defendants, which depend upon profits arising from prospective sales of the land in controversy or any part thereof, and all such as depend on a rise in the value of the price of the lands in question, or any part thereof, by reason of future contingencies, are uncertain, speculative and remote, and cannot be properly considered by you in your deliberations."

That the defendants lost the sale of lots through the premature institution of the first foreclosure suit, and through the refusal of the plaintiff to release its mortgage as to the lots sold, is quite clear from the evidence and special findings of the jury; but they were awarded damages over and above the loss thereby sustained. These damages were allowed 1. Hypothetical "boom" prices not proper basis of damages. upon a character of testimony wholly inadmissible to establish a tangible basis of recovery. The measure of defendants' damages for the wrongful acts of the plaintiff, outside the prevention of consummated or reasonably certain sales of lots, is the depreciation in the value of the other lots; that is, the difference between the value before and after the perpetration of such wrongful acts. These values must be known, or reasonably ascertainable. They must not depend upon possibilities and contingencies, or be conjectural and supposititious. They must not depend upon the varying and uncertain conditions of the future, but they must have a present

substantial existence.   The testimony for defendants did not tend to establish values of such character. It was frankly admitted by one of them that some portion of the value of the lots, as estimated by him, was dependent upon the " boom " he expected to get up for them ; that he had to create or work up a boom ; that while he " had the bottom or foundation " for such boom, its expansion was dependent upon " the disposition of the people to consummate it."   Another witness for defendants made his estimate of values conditional upon the carrying out by them of what they had in contemplation with reference to the property.

This testimony is in the face of the established and just rule that damages for loss of profits speculative and contingent in character will not be allowed. *Osborne v. Stassen,* 25 Kan. 736 ; *Walrath v. Whittekind,* 26 id. 482.   The variety of cases to which this rule has been applied can be seen by reference to the note to *Sitton v. McDonald,* 25 S. C. 68, annotated in 60 Am. Rep. 484.

Objection was made to some of the above-quoted testimony, but not to all of it.   These objections should have been sustained.   Likewise, the instructions asked upon the subject of speculative damages should have been given.   The one given by the court upon that subject, did not, we think, sufficiently direct the jury to avoid the allowance of uncertain and conjectural profits.

Another claim of error is based upon the giving of the following instructions :

"If it was within the contemplation of the parties that the defendants' ability to pay off the mortgage depended upon the sale of the lots, and the plaintiff, by refusing to release the mortgage when the sales were made, thereby made it impossible for defendants to pay said mortgage, then defendants can recover, in

addition to loss of profits on sales actually made, all moneys expended in making the improvements contemplated in said contract, such as surveying, planting trees, loss of time, and other expenses incurred."

" Unless it was contemplated by the parties that the defendants relied upon the sale of lots for means to pay the mortgage, then the damage of the defendants will be confined to the actual loss of profits on sales which the refusal of the plaintiff to release prevented."

" If it was contemplated by the parties that the sale of lots should pay the mortgage, then the jury may take into consideration what if any damages the defendants suffered by the institution of the foreclosure suit which terminated in favor of defendants; what if any sales were prevented by the institution of the suit, and any other loss that the defendants may have suffered, if any, by the institution or prosecution of such suit."

As connected with the law of these instructions, the court submitted to the jury the following question, to which the following answer was returned:

" Was it not expected by both parties that the note should be paid wholly or in part by the money got from the sale of lots?  A.  Yes."

The giving of these instructions cannot be upheld. They submit to the jury an issue the determination of which would be of no advantage in the settlement of the legal rights involved.  What the parties "contemplated" or "expected" at the time

2. What parties "contemplated" not admissible. of the execution of the contract must find its expression in such contract itself.  Their contemplations or expectations constitute no part of their agreement, and the wrongful actions of the plaintiff in instituting the first foreclosure suit, and in refusing to release lots, whereby the defendants' expectations were defeated, constitute, because of that alone, no actionable grounds of damage.  The defend-

ants were damaged, it is true, by such wrongful con-
duct; not, however, because their expectations were
defeated, but because their contract was violated.
The subject-matter of a contract, the situation of the
parties at the time it was entered into, and their in-
tention and purpose in making it, will of course be
looked to in the endeavor to arrive at its true con-
struction — to ascertain what it means ( 2 Parsons on
Contracts, 499) — but not to import into it terms not
found there, or to set up by the side of it a collateral
and qualifying engagement.

The contract in question is plain and unambiguous.
It needs no interpretation. Therefore evidence of
what was "contemplated" or "expected" by the
parties to it could not aid in the explanation of its
terms.    There was in fact but little evidence of the
kind ; nothing, indeed, but a seemingly casual question
and answer; but they and the instructions above
quoted were apart from any proper subjects of consid-
eration in the case.

The judgment of the court below is reversed and a
new trial ordered.