### E. W. BLISS CO. v. BUFFALO TIN CAN CO.

(Circuit Court of Appeals, Second Circuit. June 1, 1904.)

No. 190.

1. MANUFACTURE AND SALE OF MACHINERY—CONTRACTS—BREACH—MEASURE OF DAMAGES.

In an action for breach of a contract for the manufacture and sale of machinery, the buyer's measure of damages was the difference between the contract price and the market value of the machinery at the time and place where it was to be delivered, or, if there was no market value, then the difference between the contract price and what it would have cost the buyer to have the machinery manufactured; and this though plaintiff did not attempt to have equivalent machinery made.

¶ 1. Contracts for sale of things to be produced or manufactured, see note to Star Brewery Co. v. Horst, 58 C. C. A. 363.

2. SAME—LOST PROFITS.

   Where, at the time a contract for the manufacture and sale of machinery was made, no notice was given to the seller that the machinery was to be used by a corporation to supply tin cans under an existing contract, the seller, on a breach of the contract, was not liable for alleged lost profits, based on the opinion and estimates of experts respecting the producing capacity of the contract machinery, and the probable output of the factory in which it was to be used, if the factory had been supplied with such machinery, properly installed, and operated to its capacity, etc.; such profits being speculative and uncertain.

3. SAME—DEFENSES.

   Where defendant contracted to manufacture and sell to plaintiff certain machinery, defendant was not entitled to refuse performance on the ground that the machinery contracted for would infringe outstanding patents.

In Error to the Circuit Court of the United States for the Western District of New York.

See 118 Fed. 106.

P. G. Bartlett, for plaintiff in error.

Chas. J. Bissell, for defendant in error.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

WALLACE, Circuit Judge. This is a writ of error by the defendant in the court below to review a judgment for the plaintiff entered upon the verdict of a jury. The action was brought to recover damages for the breach of a written contract between the defendant and the Erie Preserving Company, dated April 3, 1901, whereby the defendant undertook to build and deliver to that company certain described machinery for making tin cans, and the Erie Preserving Company agreed to pay therefor the sum of $21,678. The contract provided that the machinery should be completed and ready for delivery to the Erie Preserving Company within 18 months from the date of the contract; that the quality of the machinery should be first-class, as to workmanship and material; that it should be inspected and accepted at the shop of the defendant; and that, upon a demonstration of the successful working of the machines, tested singly by the defendant, the defendant should be considered as having carried out its part of the contract.

The complaint alleged, and it was proved upon the trial, that on May 10, 1901, the defendant rescinded the contract, and, by a written notice, refused to deliver the machinery to the Erie Preserving Company. On July 10, 1901, the Erie Preserving Company assigned the contract and its right of action for damages to the plaintiff, a corporation organized shortly after the date of the contract.

Of the numerous assignments of error, those only need be considered which challenge the rulings of the trial judge in admitting evidence, and his instructions to the jury upon the question of damages. In consequence of these rulings and instructions, the jury were led to award a recovery to the plaintiff of $75,000.

The plaintiff was permitted to give evidence tending to show that, after the defendant had refused to deliver the machinery, the plaintiff diligently endeavored to purchase similar machinery from other sources,

but was unable to do so, and that as soon as practicable it installed in its factory the best machinery for making tin cans which it was able to purchase in the market (the MacDonald machinery), and had used this machinery for its manufacturing purposes ever since. The plaintiff was also permitted to give evidence tending to show how many cans it could have made in its factory, and with its facilities, and at what cost per thousand, if it had been supplied with the contract machinery, and the market prices for such cans in the years 1901 and 1902. The plaintiff was also permitted to give evidence tending to show that, about the time the Erie Preserving Company assigned to it the contract with the defendant, it made a contract with that company to sell to it during the year 1901 12,300,000 cans at specified prices; that in 1902 it also made a contract with that company to sell to it during that year 14,000,000 cans at the ruling market prices; that during the year 1901 that company actually used over 8,000,000 cans, and during the year 1902 over 9,000,000 cans, such as the plaintiff had contracted to sell to it; that with the contract machinery the plaintiff could have produced the whole number of cans called for by its contracts with the Erie Preserving Company; and that, using the MacDonald machinery, it had only been able to make about 9,000,000 cans in 1901 and 1902. The defendant duly objected to the admission of this evidence, and excepted to the rulings of the trial judge in receiving it.

The trial judge instructed the jury that they were to take the foregoing evidence into consideration in ascertaining what damages had accrued to the plaintiff for the breach of the defendant's contract during the years 1901 and 1902. He also instructed the jury as follows:

"Whether damages should be awarded to the plaintiff because of future losses—losses for the year 1903 and future years—that is entirely in your discretion. Such discretion, however, must, of necessity, be based upon the evidence and the circumstances in the case. If such damages should be very problematical, and hinge upon extreme uncertainty, you should not award any damages. * * * The question submitted to you upon this subject is whether the damages sought to be recovered for losses of gains or profits in the future are such as can with reasonable certainty be ascertained. Before awarding prospective damages, as distinguished from actual damages, you should take into consideration that corporations may default in their commercial undertakings; that machinery of the kind in controversy, or the equivalent of such machinery, may in future years be improved; that combinations now alleged to control the market may not continue; that the ingredients of manufacture may have a different value; and doubtless many other speculative considerations would enter into an award for future losses. Should you, however, with reasonable certainty, be able to say, because of the circumstances of this case, that the plaintiff will sustain damages in future years, including the year 1903, you may render an award for such prospective damages."

The defendant duly excepted to these instructions.

That the assignments of error based upon the exceptions to these rulings and instructions are well founded is hardly a debatable proposition. The evidence which was submitted to the consideration of the jury was mainly, and of necessity, based upon opinions and estimates respecting the producing capacity of the contract machinery, and respecting the probable output of the plaintiff's factory during the period beginning at the inception of its business, if the factory had been supplied with the machinery, if the machinery had been properly installed, if it

had proved equal to its expected capacity, and if it had been efficiently operated. The normal producing capacity of machinery which has been adequately tested is susceptible of proof, and such proof can be safely accepted as the standard for similar machinery; but the probable producing capacity of a manufacturing concern which is about to enter upon a new business depends upon so many considerations, irrespective of the machinery which it is to employ, that opinions and estimates about it are little more than guesses. But the objection to the evidence is not that it is unreliable. It does not go to the weight or value of the testimony. The objection is that the evidence bears upon an inquiry which the courts ought not to entertain.

In actions for breach of contract, like the present, the measure of damages is usually the difference between the contract price of the things which are to be made and delivered, and their market value at the time and place where they should have been delivered. In exceptional cases this rule of damages is extended to include other losses occasioned by the breach; but never, according to the best-considered authorities, is it extended to include the loss of general profits which the injured party might have been able to realize from using them in his business for manufacturing purposes, and disposing of the products. The cardinal rule is familiar that only such damages are recoverable as follow directly and naturally from the breach of contract—such as it may be fairly supposed the parties contemplated when contracting as the natural sequence of its breach—and these must be certain, as distinguished from speculative or contingent, damages. The application of this rule to the present case is best illustrated by reference to a few of the adjudications. Howard v. Stillwell, etc., 139 U. S. 199, 11 Sup. Ct. 500, 35 L. Ed. 147, was a case where the contract broken was one for the reconstruction of a mill by placing certain specified machinery therein within a specified time, guarantied to have a specified capacity; and the mill owner sought to prove, as damages for the breach, the profits which would have been realized from the use of the mill during the period of delay in performing the contract. The court held that the evidence of such damages was inadmissible. Pennypacker v. Jones, 106 Pa. 237, was a case where a mill owner had made a contract with machinists to place in his mill within a specified time machinery of a certain capacity to make high-grade flour. The machines furnished were incapable of making high-grade flour, and of producing the stipulated number of barrels per day. In an action for damages by the mill owner for breach of the contract, the court held that the loss of possible profits which might have been made if the mill had run properly was not a proper subject of damages, and for the reason that such damages were too remote and speculative. In Griffin v. Colver, 16 N. Y. 489, 69 Am. Dec. 718, the plaintiff agreed to build a steam engine and boilers for the defendants, and to deliver it to them on a day certain. He failed to do so, and a delay of one week occurred, during which the defendants lost the use of the machinery for the sawing and planing of lumber which the steam engine was intended to drive, and which plaintiff knew it was intended to drive. The court held that the defendants, in recouping damages, were not entitled to measure their loss by a breach of the contract by estimating what they might have

made by the use of the engine and their other machinery, had the contract been complied with, and decided that they were entitled to recover the ordinary rent or hire which could have been obtained for the use of the machinery whose operation was suspended for want of the engine. In Rochester Lantern Company v. The Stiles & Parker Press Co., 135 N. Y. 209, 31 N. E. 1018, the defendant entered into a contract with one Kelly to make and deliver to him within a reasonable time certain dies to be used by him in the manufacture of lanterns. Before the breach, Kelly assigned his contract to the plaintiff; and the plaintiff sought, as damages for the breach, to recover rent of premises, and wages of employés, paid during the time in which, in consequence of not being supplied with the dies, he was unable to manufacture any lanterns. The court held such damages were not recoverable, and said:

"The natural and obvious consequence of a breach of this contract on the part of the defendant would be to compel Kelly or his assignee to procure the dies from some other manufacturer, and the increased cost of the dies, if any, would be the natural and ordinary measure of damages; and such would be the damages which it could be fairly supposed the parties expected, when they made the contract, would flow from a breach thereof."

Although it is unnecessary for present purposes to consider any of the other assignments of error, it is proper that we should make some further observations for the guidance of any future trial of the cause. The voluminous record before us presents the proceedings of a very protracted trial, and exhibits an accumulation of evidence upon matters which had no legitimate bearing upon the real controversy between the parties. The making of the contract was not disputed. The breach was not disputed. The alleged justification for the breach put forth by the defendant—that it had discovered that the machinery would infringe outstanding patents—hardly merited serious consideration, and was properly excluded by the trial judge. The evidence offered by the plaintiff bearing upon the defendant's motive or inducement for the breach was wholly immaterial. The real controversy between the parties resolved itself merely and simply into an inquiry as to damages. This inquiry should have been limited to ascertaining the difference between the contract price of the machinery which the defendant undertook to furnish, and the cost to the plaintiff of procuring similar machinery from some other source. If, as was suggested by the evidence, the machinery could not have been bought from other vendors, it was open to the plaintiff to have it made, and in this behalf to employ draftsmen and mechanics competent to make it; and, notwithstanding plaintiff did not attempt to have equivalent machinery made, if it had shown upon the trial that the reasonable expense of procuring such machinery would have exceeded the contract price, the plaintiff would have been entitled to recover the excess. When an article has no market value, an investigation into the constituent elements of the cost to the party who is entitled to be furnished with it becomes necessary; and that, compared with the contract price, will afford the measure of damages. Masterton v. The Mayor, 7 Hill, 61, 71, 42 Am. Dec. 38. The evidence did not suggest that the defendant was aware when the contract was made that the Erie Preserving Company proposed to use the machinery in any particular factory, or

install it as a part of any particular plant. That company was at the time engaged in the business of preserving fruits and vegetables, and, instead of buying its cans in the market, as it had done previously, proposed to manufacture them itself. According to the testimony for the plaintiff, the defendant was aware that the plaintiff intended to go into the business of making its own cans, and that it proposed to organize a subordinate or auxiliary corporation to carry on the canmaking business. At that time, however, the plans of the Erie Preserving Company were inchoate. It had not rented any factory building or purchased any auxiliary plant. Indeed, it would seem that this was not done until after the defendant had repudiated its contract and notified the Erie Preserving Company. Under these circumstances, it cannot be said with any color of reason that the parties to the contract contemplated when it was made any liability of the defendant, in the event of a breach, beyond the usual consequences of the failure of a vendor to deliver property which he had agreed to sell. In the language of the court in Globe Refining Co. v. Landa Cotton Oil Co., 190 U. S. 545, 23 Sup. Ct. 754, 47 L. Ed. 1171:

"It may be said with safety that mere notice to a seller of some interest or probable action of the buyer is not enough, necessarily and as a matter of law, to charge the seller with special damage on that account if he fails to deliver the goods."

As was said by the Supreme Court of Massachusetts in Harvey v. Conn., etc., R. R. Co., 124 Mass. 424, 26 Am. Rep. 673:

"The mere knowledge on the part of the defendant that the plaintiff intended to make contracts for the sale of the ties to be transported cannot impose a liability upon the defendant for the loss of profits of such contracts. Whether there would be a loss of profits, it was, of course, then impossible to tell, and probable profits would be incapable of estimation."

If at the time of the making of the contract with the defendant the Erie Preserving Company had acquired and installed a manufacturing plant, and the contract had contemplated the use of the machinery as an indispensable part of the plant, the case would have been one, according to some of the authorities which have been referred to, in which the rental value of the plant during the time required to supply equivalent machinery would have been an element of damages, in addition to the difference in cost

The judgment is reversed.

LACOMBE, Circuit Judge. I concur fully in this opinion. The proposition advanced in argument, that plaintiff would have been enjoined by the owner of outstanding patents from using equivalent machinery, even if he had had it built, is of no weight. That circumstance would not modify the rule of damages laid down in the opinion for breach of a contract to make and deliver machinery. The contract sued upon is not one to save plaintiff harmless from all suits for infringement of patents.