THE PAOLA GAS COMPANY v. THE PAOLA GLASS
COMPANY.

No. 8150.

1. BREACH OF CONTRACT — *Prospective Profits* — *Measure of Damages*. A company organized for the manufacture of glassware contracted with a natural-gas company to supply the former with sufficient fuel to operate a 12-pot glass factory at Paolà, Kan., during a period of 10 months for $300 per month. Afterward, the glass factory was completed and equipped and an effort made to operate it, but without success, when the business was suspended. It was claimed by the glass company, and has been found by the trial court, that the cause of the failure was the refusal of the gas company to furnish a sufficient quantity of gas. It was a new business venture, and no factory of a similar character had been established in the state or in this section of the country. *Held*, That the prospective profits of the business embraced too many elements of uncertainty to form a just basis of measuring the damages sustained by reason of the breach of the contract.

2. ——— *Measure of Recovery*. In such a case the injured party is entitled to recover, first, the expenses necessarily and actually incurred in the unsuccessful attempt to operate the factory; and, second, the fair rental value of the idle factory, and, if it has no rental value, then interest on the money invested in the same, together with interest on any idle working capital the use of which had been lost by reason of the violation of the contract.

3. ——— *Account-Books as Evidence*. A witness who has not kept the books or the pay-rolls, and who has no recollection of of the facts independently of them, cannot state the contents of such books or pay-rolls.

4. ——— *Skilled Workmen Imported*. Where men skilled in the manufacture of glass could not be found near the factory, and it was necessary to bring them from a distance, the cost of their transportation may be treated as a part of the expenses of the attempted operation of the factory.

5. ——— *Services of Officers* — *Payment*. If the services performed by officers of the glass company were necessary to the operation of the factory, the compensation which the company had agreed or was required to pay for such services may be treated as a part of the expenses of operation for which the gas company is liable.

*Error from Miami District Court.*

THE Paola Glass Company brought an action against The Paola Gas Company to recover damages for breach of a contract made May 21, 1887, in which the gas company agreed to deliver at the works of the glass company, for 10 months from September 1, 1887, all the natural gas necessary to run a 12-pot glass factory for the manufacture of glass bottles; and it was further agreed that the contract included the use of gas for accessory purposes, together with heating and light-ing the glass-works. The consideration to be paid by the glass company was $300 per month, which was to include only the actual time when gas was furnished; and it was further agreed, that the gas company would exercise due care to furnish the natural gas continuously, unavoidable casualties excepted, and that the glass company would use due care to keep the factory in operation, excepting unavoidable casualties or in case of a shut-down.

The principal issue upon the trial was whether or not the contract had been violated by the gas company in failing to furnish a sufficient quantity of natural gas to run the works. The case was sent to a referee, who, in accordance with the directions of the court, made findings of fact and conclusions of law sepa-rately. It was found that, immediately after the mak-ing of the contract, the glass company began the construction of a glass factory, and that it was com-plete and ready for operation in the following Septem-ber. The glass company brought upon the ground much material for the construction of glass, a com-plete set of tools, and a large number of molds, suffi-cient for the capacity of the factory. It also employed and brought from St. Louis to Paola, at a large ex-

pense, over 100 workmen skilled in the manufacture of glass, and, having established a sufficient line of credit, it was prepared to prosecute the work of manufacturing flint-glass bottles successfully. The gas company commenced to deliver gas about October 5, 1887; but, upon commencing the operation of the works, the glass company found that it was unable to melt material properly, because of an insufficient supply of heat which was caused by the failure of the gas company to furnish a sufficient amount of gas. The gas company had two gas-wells, known as the "Boone wells," and they also had five other flowing wells, which were known as the "Westfall wells." The factory was connected directly with the Boone wells, while the Westfall wells supplied the city of Paola with natural gas; but the mains of the two sets of wells were connected. It was found that the company had sufficient gas to have furnished the glass company what it required, but that it refused to do so because it was more profitable to sell the gas to customers in the city of Paola. The glass factory had been constructed for operation with natural gas; and could not be changed, without great outlay, for the use of any other fuel; and it was further found, that in fact no other fuel could be profitably used in operating the factory.

The gas company contended that the factory was faulty in plan and construction, but this contention is negatived by the findings. It was found that, on a few occasions when there was sufficient gas furnished, a good quality of glass bottles was made, but the gas company refused to turn gas from the Westfall wells to make up the deficiency; and as it had a monopoly of the natural gas in that vicinity, and refused to supply what was necessary, the glass company was

compelled to, and did, about December 15, 1887, stop the attempt to manufacture. It was found that the glass company had suffered damages as follows : "The net cost of attempting to operate factory, $9,000 ; also, the loss of profit which would have been made, $10,000." As a conclusion of law, it was found that the glass company was entitled to recover judgment against the gas company in the sum of $19,000. Afterward, the referee, upon the request of the defendant, made additional findings, setting out a detailed statement of the net cost of operation, as follows :

| | |
|---|---:|
| P. B. Leach (not on pay-roll), 3 months, at $160 per month, | $480 00 |
| De Cordova (not on pay-roll), 3 months, at $160 per month, | 480 00 |
| Mr. Silk (not on pay-roll), 3 months, at $75 per month.... | 225 00 |
| Fare of laborers from St. Louis to Paola, paid by company and not on pay-roll.................................. | 165 00 |
| Cost of pots used up...................................... | 2,400 00 |
| Cost of material (not including pots) ..................... | 1,900 00 |
| Paid out to operators in attempting to manufacture glass, | 5,650 00 |
| | $11,300 00 |
| Credit value of products manufactured.................. | 2,300 00 |
| Net cost of attempted operation...................... | $9,000 00 |

A further finding was made that the cost of the glass factory and appurtenances was (not including tools) $10,000 ; the amount of capital invested by the glass company in the construction of the glass factory and appurtenances (not including tools) was $12,000 ; the value of tools, etc., with which to operate the factory was $7,000. The glass company borrowed about $10,000, which was in addition to the other sums mentioned as having been invested in the business. It was further found, that the glass factory was the first one ever established in the vicinity of Paola, Kan., and the manufacture of glass bottles or glass goods of any kind was not an established industry at the time when the contract between the parties was executed. It was further found, that the $10,000 profits which

would have been made by the glass company, had an adequate supply of gas been furnished, did not include any allowance on account of the extraordinary business qualifications of P. B. Leach, the president of the glass company, but that the sum found was based upon such tprofis as could have been made by ordinary business management had there been a sufficient supply of gas. The gas company was not informed by the glass company what percentage or amount of profit could have been made on the product of the factory with an adequate supply of gas. Judgment in favor of the glass company for $19,000 and costs was awarded. The gas company complains, and brings the case here. The opinion was filed April 11, 1896.

*H. C. Mechem*, and *Sperry Baker*, for plaintiff in error.

*Warner, Dean, Gibson & McLeod*, and *N. H. Loomis*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J. : The principal inducement for establishing a glass factory at Paola was the cheap fuel which it was supposed could be obtained there, and which the gas company agreed to furnish. The manufacture of glassware was an untried enterprise in the West. It was unsuccessful, and the cause of the failure is the main subject of dispute. On one side, it is contended, that it was due to an insufficient supply of gas, which the gas company had agreed to furnish ; and on the other side, the contention is that the supply was ample, but that the factory was defective in plan and faulty in construction, so that the gas supplied was not utilized. The findings of the referee, based as they are upon conflicting testimony,

settle the contention in favor of the glass company. It must be assumed in this review that the sole cause of the failure was the violation of the contract by the gas company in refusing to furnish the quantity of gas that it had agreed and was able to supply. The contract having been broken by the gas company, it must be held liable for all the direct and proximate damages which resulted from the breach. How shall the damages be measured? The allowance made by the referee was in two items : First, $9,000 for the expense incurred in the unsuccessful attempt to operate the factory; and, second, $10,000 for the anticipated profits of running the factory for a period of 10 months. As to the first item, there is no dispute except as to the amount of the allowance. It is conceded that the glass company is entitled to recover the actual loss incurred in the unsuccessful attempt to operate the factory. There is a controversy as to what constitutes actual expense of operation, and it is contended that the allowances made were not established by competent testimony. In an attempt to show that expense or loss, the president of the glass company was permitted to state the amount of the pay-rolls of the company and the contents of some of the books of account. He did not have the pay-rolls or books at hand, and it does not appear that he had prepared or kept them. It is clear from his testimony that he had not personally attended to the payments for labor, material, utensils, machinery, and repairs, and he did not pretend to have any definite knowledge as to either items or amounts, except as he obtained them from the books and accounts. In the absence of personal knowledge of the witness or other proof of actual payment, the expenses incurred could properly have been shown by the pay-rolls and books ;

but before they could have been offered it was necessary that they should have been identified, and to show that they were kept in such a manner as to make their contents receivable in evidence. There was no showing as to what the books were — whether they contained a pay-roll, and under whose direction or supervision they were kept; whether the entries therein were correct, or made at or near the time when payments were made. Without having transacted the business, or having any recollection of the facts independently of the books, he was allowed to testify of losses amounting to $9,000, which were necessarily made up from a great number of items. The information which he had, however correct it may have been, was derived from others and from books and accounts of which it is not shown that he had any knowledge at all. His testimony as to what was shown by the pay-rolls and books is obvi-

3. Account-books as evidence.

ously incompetent. This was substantially all the testimony upon which the greater part of the allowance for the net cost of the unsuccessful operation of the plant rested. His testimony was that the pay-rolls showed that over $7,000 was paid to operatives, while in another part of his testimony he stated that the cost of the product made during the time of operation was between $5,000 and $6,000; and upon this incompetent and inconsistent testimony the referee found that the amount paid to operatives was $5,650. The testimony upon this matter was incompetent and wholly insufficient to sustain the finding that was made.

Objection is made to the allowance of the expenses in bringing operatives to Paola. It appears that men skilled in the manufacture of glass could not be found in Kansas, and therefore the company was obliged

to go to St. Louis and other points for skilled opera-
tives. In order to manufacture glassware it was nec-
essary to have men who were skilled in
that business; and, if it was necessary to
pay the cost of their transportation in or-
der to induce them to come west, we think it may be
treated as a part of the expenses of the actual opera-
tion of the factory.

4. Skilled
workmen
imported.

The allowances made to the officers of the corpora-
tion are contested. The mere fact that they were offi-
cers of the corporation, or that they might have been
entitled to salaries from the corporation, does not re-
quire that the salaries shall be treated as a part of the
expenses of operation. If the services performed by
them were necessary to the operation of
the factory, the compensation which the
company had agreed or was required to
pay for such services should be treated as a part of
the expense of operation for which the gas company
is liable. The liability, however, should be confined
to actual expenses, properly and necessarily incurred
in the unsuccessful attempt to manufacture glass.
Some of the testimony regarding the expenses of op-
eration was incompetent, as we have seen, and some
was weak in failing to show that the expenses allowed
were reasonable and necessary, or necessarily and ac-
tually paid out; and the fact that the referee made an
allowance of about $4,000 more than was claimed in
the petition emphasizes the errors that were com-
mitted.

5. Services of
officers—
payment.

The main contention, however, in the case is over
the allowance of prospective profits. The contract was
doubtless made, and the enterprise undertaken, for the
profits expected to be gained. The gas company
must have been aware that that was the purpose of

the venture, and if the failure was due to the fault of that company it cannot escape liability for the actual loss sustained. It is urged that damages cannot be measured by the anticipated profits, as the calculation is necessarily based on conjecture, rather than upon facts. It is the aim of the law to give a party injured by the breach of a contract all the damages which he may suffer from such breach ; and where the contract is made with a view to future profits, and such profits are within the contemplation of the parties, they may, where they can be established with certainty, form a just measure of damage. It has been said that, as a general rule with a few exceptions, anticipated profits prevented are not recoverable in the way of damages for the breach of contract ; but it is well settled in this state that damages based on prospective profits which would have been realized had the contract been performed may be allowed, providing they are fairly within the contemplation of the parties, are the direct and natural consequence of the breach of the contract, and are susceptible of being ascertained with reasonable certainty. (*Hoge v. Norton*, 22 Kan. 374 ; *Brown v. Hadley*, 43 id. 267 ; *Town Co. v. Lincoln*, ante, p. 145, 42 Pac. Rep. 706.)

All the authorities agree that profits which are conjectural, and cannot be measured by the usual rules of evidence to a reasonable degree of certainty, are not recoverable. The manufacture of glass in Kansas was subject to many uncertain contingencies, and the profits that would have been realized if the business had continued are largely a matter of speculation and conjecture. No such business had ever been established in Kansas, the material found here had not been used for the making of glass, and whether the natural gas discovered at Paola could be successfully

applied and utilized was a problem.  In many respects
the manufacture was only an experiment.   It is esti-
mated, however, that in the brief period of 10 months,
and with only a small investment, the net profits
would have reached the sum of $10,000.   The success
of the adventure depended not alone on the supply of
fuel.   If material could be obtained at fair prices,
skilled and careful workmen employed at reasonable
wages, and kept steadily at work, and if, with fuel, ma-
terial, labor, and skill, the large product that was esti-
mated by the referee could have been made, the enter-
prise might still fail.   A market must be found for
the product, and it would have to be sold in a new
field for an amount in excess of the cost of produc-
tion.   That involves the advertising of the business
and the company, which, as yet, had no standing
in the business world, the building up of a credit
and a reputation, the state of the glass trade in the
country during the 10 months, including the fluctu-
ations of the market, the competition that would
have to be met, the railroad rates, and the cost of
sale and distribution.   There are other elements of
uncertainty; and what assurance is there that any
profit whatever could have been made during the
continuance of the contract?   Then there are the
mishaps which usually attend the establishing of a
new industry— the delay or failure in obtaining suita-
ble material, the breaking of machinery, accidents in
the application of natural gas, which was an untried
fuel, or resulting from the careless or unskilful acts
of employees, a misfortune in the melt of the glass,
which sometimes occurs, breaking utensils or appli-
ances that would have caused both delay and expense.
It will be conceded that only a small proportion of the
industrial enterprises attempted are successful, and a

much fewer number of them realize profits during the
first 10 months of their existence. If it had been an
established business, or if other manufactories of a
like kind existed in Kansas under similar conditions,
there would be some basis of estimating profits; but
we fail to find any safe guide in measuring the gains
that would have been made by this factory if fuel had
been supplied. Some of the parties connected with
this enterprise had been engaged in the manufacture
of glass at St. Louis, where coal was used for fuel;
but the testimony discloses that its operation resulted
in losses rather than gains. Who can say that there
would have been a different result by the operation of
a factory in Kansas for the short period of
10 months? Where the expected profits
depend upon so many contingencies and
are so uncertain and speculative in char-
acter as in this case, a different measure
of damages must be employed. (*Town Co. v. Leonard*,
46 Kan. 354.)

1. Breach of
contract—
prospective
profits—
measure of
damages.

Much reliance is placed upon the rulings of this
court in the cases of *Hoge v. Norton*, supra; *Brown v.
Hadley*, supra; and *Town Co. v. Lincoln*, supra. All
of these cases are close to the border line dividing
profits which may be allowed from those which should
be rejected. In each of them, however, the business
upon which profits were allowed was not new or un-
tried, but had been established and carried on to such
an extent in the community that a safe basis of cal-
culation could be found. In *Hoge v. Norton*, supra,
profits were estimated on the cattle business, which is
well established in Kansas, and is carried on to such
an extent that the laws of feeding and growth are
well understood, and the results reasonably certain.

In *Brown v. Hadley*, supra, the business was dairying, which, it was said, has been extensively engaged in ever since the settlement of the state, and that therefore the gains could be estimated by men of experience in that business with reasonable certainty.    In *Town Co. v. Lincoln*, supra, the breach of the contract resulted in breaking up an established business, and the profits that had been made for a reasonable period next preceding the time of the breach furnished a reasonably certain basis of calculating those that would have been realized if no breach had occurred. All of these cases recognize the rule that uncertain and contingent profits are excluded by the law, and in them there is nothing to support the allowance of profits on a business entirely new in this section of the country, and where there is no basis upon which to determine whether any profit whatever would have been made.    We think a safer and better rule may be found for measuring the damages, and in cases where they may be estimated in a variety of ways, that rule should be adopted which is most definite and certain.    A just measure, and one which is conceded by the plaintiff in error, is the rental value of the idle factory, and, if it has no rental value, then interest on the money invested in the same, together with interest on any idle working capital which could not be used by reason of the violation of the contract.    Considering the uncertainties attending the manufacture of glass in this state, we think the measure suggested is a safer standard for measuring the loss than the anticipated profits could be.    The view taken that profits are not allowed in a case of this character is in accordance with the current of authority, but only a few of the cases will be cited : *Abbott v. Gatch*, 13 Md. 314 ; *Todd v. Railway Co.*, 39 Minn. 186 ; *Popos-*

2. Measure of recovery.

*key v. Munkwitz*, 68 Wis. 322 ; *Griffin v. Colver*, 16 N. Y. 489 ; *Benton v. Fay*, 74 Ill. 417 ; *Railway Co. v. Howison*, 86 id. 215 ; *Pennypacker v. Jones*, 106 Pa. St. 237 ; *Allis v. McLean*, 48 Mich. 428 ; *Dixon - Woods Co. v. Glass Co.*, 32 Atl. Rep. 432 ; *Iron Works v. Oatmeal Co.*, 55 N. W. Rep. 518 ; *Bridges v. Lanham*, 14 Neb. 369 ; *Rhodes v. Baird*, 16 Ohio St. 573 ; *Mining Co. v. Fraser*, 130 U. S. 611 ; *Howard v. Manufacturing Co.*, 139 id. 199 ; *Jones v. Call*, 96 N. C. 337 ; *Brownell v. Chapman*, 84 Iowa, 504.

The judgment of the district court will be reversed, and the cause remanded for another trial.

All the Justices concurring.