VILTER MFG. CO. v. ABEEL.

(Circuit Court of Appeals, Fifth Circuit. October 2, 1911.)

No. 2,113.

1. SALES (§ 442*)—BREACH OF WARRANTY—CONSEQUENTIAL DAMAGES.
    Where defendant contracted to furnish and install an ice plant for plaintiff with a warranty of efficiency and capacity, and the installation of such plant required the tearing down of a building by plaintiff, on a finding by the court of a breach of the warranty which relieved plaintiff of any obligation to accept the plant and that he had not accepted it, the value of the building so torn down was a proper element of damages recoverable for breach of the warranty, as one which was within the comtemplation of the parties when the contract was made.
    [Ed. Note.—For other cases, see Sales, Dec. Dig. § 442.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2.** SALES (§ 442*)—BREACH OF CONTRACT FOR INSTALLMENT OF ICE PLANT—DAMAGES.

Defendant installed an ice plant for plaintiff, with a warranty that it would produce 50 tons of plate ice per day. It fell short by some few tons of the production, but was used through the season for plaintiff's benefit. Because of the breach of the warranty, the court, in effect, rescinded the contract, and required defendant to refund the payments received on the plant besides paying damages more or less certainly proved. *Held*, that plaintiff was not entitled to recover as additional damages the rental value of the plant because not accepted and paid for, and especially where there was no certain proof of actual damages.

[Ed. Note.—For other cases, see Sales, Dec. Dig. § 442.*]

In Error to the Circuit Court of the United States for the Western District of Texas.

Action at law by Alfred Abeel against the Vilter Manufacturing Company. Judgment for plaintiff, and defendant brings error. Reversed.

This is an action at law orginally brought by defendant in error herein in the district court of McLennan county, Tex., and removed to the Circuit Court in and for the Western District of Texas by petition of the defendant, the Vilter Manufacturing Company.

The case hinged on the question of breach of warranty, and the controversy grew out of a series of transactions embraced primarily in three separate written contracts entered into between the parties hereto, which contracts may here be summarized as follows:

Agreement dated Dec. 9, 1805, finally executed and delivered in modified form Feb. 7, 1906, for a fifty ton plate ice-making plant to be furnished and erected by plaintiff in error on the premises of defendant in error at Waco. Texas............... $25,690 00
Agreement executed March 17, 1906, for an ammonia condenser erected on same premises.................................... 2,400 00
Agreement dated April 1, 1907. for a combined Corliss steam engine and ice machine and other equipment specified, also to be erected on the same premises........................... 12,765 00

Aside from the foregoing contracts, defendant in error entered into a written agreement on December 9, 1905, with one the American Diesel Engine Company for the installation by the latter of a large oil-burning power engine intended to provide the necessary power to operate the 50-ton plate ice-making plant furnished by plaintiff in error under the first contract above mentioned. In this proceeding defendant in error sought also to hold plaintiff in error responsible jointly and severally with the said Diesel Engine Company for the fulfillment of the covenants and warranties contained in that contract, but the trial court sustained special demurrer to that contention in favor of plaintiff in error. The Diesel oil engine did not fulfill expectations, and was discarded by defendant in error in the spring of 1907, after having operated in a very unsatisfactory manner only a portion of the 50-ton ice plant referred to during a part of the season of 1906. As a result of this condition of affairs the parties hereto entered into the contract of April, 1907. for the installation of the steam power plant and ice machine and other equipment specified therein. After the installation of this new power plant and ice machine in the spring of 1907, the plate ice tank furnished under the first contract was operated more or less satisfactorily during the season. By the fall of 1907. defendant in error had by advances and payments on account reduced his indebtedness to plaintiff in error to about $23,000, but on October 8th he wrote a letter to plaintiff in error declining

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

191 F.—18

to make further payments on his contracts, alleging that the plant was a failure.

This, however, was not considered final by either party, and the matter of perfecting the machines so as to do satisfactory work was kept open through the balance of the year 1907 up to and during February, 1908, during which time supplies and additions were requested and furnished, and examinations and tests made with a view to correct troubles, particularly looking to the use of water 'from condensed steam, and finally, on February 27, 1908, the defendant in error addressed to the plaintiff in error the following letter:

"Waco, Texas, February 27, 1908.

"The Vilter Mfg. Co., Milwaukee, Wis.—Gentlemen: Cap't Alfred Abeel directs us to inform you that after this date he will no longer be responsible for the fire protection on your engine and machinery, plate ice plant and equipment installed in our premises in Waco, Texas.

"Please accept this as a notice that Mr. Abeel is no longer responsible for loss either by fire or storm, tornados, cyclones or earthquakes.

"Kindly acknowledge receipt of this letter and signify your acceptance of the above notice.    Yours truly,    Big Four Ice & Coal Co.,
"E. W. Kramer, Manager."

—to which letter the following reply was made: .

"Milwaukee, Wis., March 6, 1908.

"Mr. Alfred Abeel, Waco, Texas—Dear Sir: We have received advices that you have withdrawn responsibility of keeping up insurance on the machinery covered by our materialman's lien, which we have filed in your county clerk's office. We do not understand that it is within your power to elect, without our consent, to annul the contract in this particular. Furthermore while the contract stipulates that the title shall remain in us until the machinery is paid for, we are advised that this stipulation is for our benefit and for our protection, and that it lies with us to elect whether we shall reclaim the property or sue for the purchase money, and we here now advise you that we have elected to and do elect to confirm the title in you and to recover from you the purchase price of the machinery and to foreclose our lien in the matter. We shall expect to assert our claims in the court for the amount of the purchase price due, for a foreclosure of our lien upon the premises, and for a judgment for the entire debt against you, independent of whether the property is lost by fire or not; but in the meantime we insist that you continue to comply with your contract and keep the machinery insured in our favor.    Respectfully yours,    The Vilter Mfg. Co.,
"Theo. O. Vilter, Pres't."

Plaintiff in error filed a mechanics' lien on the premises of defendant in error for the balance claimed to be due under the said contracts, but, before beginning its suit to foreclose same, defendant in error instituted this action.

In due course plaintiff in error filed its suit in equity in the Circuit Court of the United States in and for the Western District of Texas to foreclose its mechanics' lien referred to, and, when this case came on for trial at the February term of said court in 1909, the parties entered into a written stipulation, agreeing that both sides should waive a jury, and that the issues in said cause should be submitted to the court instead of a jury. It was also agreed that all legal issues between the parties should be presented by the pleadings and determined in this cause, which was to include whatever claims the defendant had against the plaintiff growing out of the transactions set up therein, including the claims asserted by the defendant against the plaintiff in the equity suit then pending in the said court, with the exception of its claimed lien. It was further stipulated that the case should be continued until the November, 1909, term of said court.

At the November term, 1909, the plaintiff below filed a lengthy second amended original petition, which is reminiscent and redundant, and therein stated his damages sued for as follows:

Filterer and pump...........................................$ 1,000 00
Building for freezing tank................................. 16,000 00
Engine room............................................... 4,000 00
Ice storage house......................................... 12.000 00
Tearing down and destroying storage house................. 5,250 00
Loss of ammonia........................................... 3,600 00
Steam and other connections............................... 2,500 00
Coal and fuel furnished................................... 4,969 00
Lubricating oil........................................... 886 65.
Itemized account (Exhibit 5).............................. 21,611 09
Loss of profits for 1906.................................. 25,000 00
Loss of profits for 1907.................................. 25,000 00
Loss of profits for 1908.................................. 25,000 00
Loss of rents for 1906.................................... 15,000 00
Loss of rents for 1907.................................... 20,000 00
Loss of rents for 1908.................................... 20,000 00

Together with 6 per cent. interest per annum thereon from the date of the accrual of such interest.

The defendant below answered by general and special exceptions. and general and special denials. These pleadings were followed with a first supplemental petition and a first supplemental answer. Of the exceptions, some 20 in number, on hearing 5 were sustained by the court, and the remainder overruled. No one of these exceptions was directed against the itemized claims for damages as given above. Thereupon the cause was submitted to the court on voluminous evidence. In reference to the evidence. it is only necessary to notice that no errors are assigned in regard to the admission or rejection of the same or any part or portion of it.

The court rendered and filed the following:

### "Conclusions of Fact and Law.

### "Alfred Abeel v. Vilter Manufacturing Company.

"(1) After the defendant operated the plant in 1906 and for several months in 1907, there was a failure to produce 50 tons of clear merchantable ice from the plate ice plant installed on the premises of plaintiff, and the inference is clearly deducible, and the court so holds, that the plant was not capable of producing the quantity and quality of ice specified in the contract under the conditions therein named. The guaranty was therefore broken, and plaintiff was not compelled to accept the plant; nor did the acts of the plaintiff and his employés amount to an acceptance.

"(2) Under the two contracts of 1905 and 1907, and in view of the evidence in the case, the plaintiff is not entitled to recover damages growing out of the operation of the plant for the year 1906. If any damages were suffered by the plaintiff for that year growing out of the operation of the plant, the court is of opinion that the defendant is not liable therefor. And as the American Diesel Engine Company is not a party to the suit, and as there is a suit pending against it at the Waco division brought by the plaintiff to recover damages. no opinion is expressed as to its liability.

"(3) The title to the plate ice plant and the machinery specified in the two contracts was reserved in the defendant until paid for in cash, and the defendant still owns the same and has title thereto with right of possession.

"(4) The guaranty of the defendant having been broken and the plaintiff not having accepted the plant contracted to be sold to him by the defendant, he is entitled to recover back. with interest at 6 per cent. per annum, such sums as he may have paid the defendant on account thereof. together with such additional amounts as he may have paid to the defendant on account of the service rendered by its employés in 1907 in operating the machinery, all of such items appearing in Exhibit 5 attached to the plaintiff's petition, but the items of payment on account of the condenser are excepted from this statement. He is also entitled to recover on account of the breach of the contracts by the defendant such damages as were incidental to and caused by the breach and which were reasonably supposed to enter into the contemplation

of the parties at the time of the execution of the contracts, with interest as stated.

"(5) Judgment will therefore be rendered in favor of the plaintiff against the defendant for the following sums, to wit: (a) For moneys paid the defendant $23,098.24, which includes principal and interest. (b) As damages growing out of the breach of the contracts by the defendant the sum of $27,-595.70, including principal and interest. This item of damages includes value of old building and tearing down of building, $4,299.10, damages on account of plate tank building claimed by the plaintiff to be worthless, $9,746.60, and rent of the property for 1907, $13,540. The costs of the suit will be taxed against the defendant, to which ruling the plaintiff and the defendant in open court excepted. The court desires to observe that it is extremely difficult to arrive at a satisfactory conclusion in the case, but it is thought that the result announced will, conformably to legal principles, accomplish the ends of substantial justice as between the parties. [Signed] T. S. Maxey, Judge."

The record shows that on this ruling the defendant below then and there excepted. Thereupon the court rendered a judgment as follows: "It is therefore considered and adjudged by the court that the plaintiff, Alfred Abeel, do have and recover of and from the defendant, the Vilter Manufacturing Company, a corporation duly incorporated, the sum of fifty thousand six hundred and ninety-three and $94/100$ (50,693.94) dollars, with 6 per cent. per annum interest thereon from this date until paid, together with all costs of suit in this behalf expended, for which execution may issue, to which action of the court, both parties, plaintiff and defendant, did then and there except. It is further considered and adjudged by the court that the defendant, the Vilter Manufacturing Company, take nothing by its cross-action and counterclaim set out in its second amended original answer filed herein, and that, as to the said cross-action and counterclaim, plaintiff, Alfred Abeel, go hence without day and recover of said defendant all costs in that behalf expended, for which execution may issue, to which action of the court defendant did then and there except." The defendant below brought the case to this court on writ of error with some 48 assignments, the first 20 of which assign errors of the court in ruling upon the pleadings in the case. Twenty-four attack findings of fact of the court either as against the evidence or as based upon insufficiency of evidence. The twenty-ninth assignment of error complains of the allowance of $4,299.10 on account of value of old building and tearing down the building, for the reason that the said damage is too remote and uncertain, and is not such consequential damage as under the law plaintiff would be entitled to recover for under this action. The thirtieth assignment charges that the court erred in allowing the sum of $9,746.60 as damages on account of plate tank building erected by the defendant, for the reason that the same is too remote and uncertain, and is not such consequential damage as under the law plaintiff would be entitled to recover for in this action. The thirty-second assignment and the thirty-fifth cover the same ground, and the thirty-fifth reads as follows: "The court erred in rendering judgment for plaintiff against defendant for the sum of $13,450 on account of rent of the property for the year 1907, which is one of the items found by the court in his conclusions of fact and law, and which goes in part to make up the aggregate sum for which judgment was rendered herein; for the reason that the rental value of the property as sued for by plaintiff herein is not such element of damage as under the law is cognizable in an action of the character as brought by plaintiff herein, and therefore cannot form any proper basis for recovery herein." And the thirty-fourth assignment of error is as follows: "The court erred in rendering judgment for plaintiff against defendant for the sum of $13,540 on account of rent of the property for the year 1907, which is one of the items found by the court in his conclusions of fact and law, and which goes in part to make up the aggregate sum for which judgment was rendered herein; for the reason that the evidence in the record shows that plaintiff operated the said property and plant and utilized the same and produced and sold a large quantity of ice therefrom in the regular course of his business during the said season of 1907, and the evidence does not disclose how much ice was so produced and sold, and, under this state of facts, there

was no basis upon which to calculate the loss to plaintiff for rental value for the said season of 1907, and therefore there was no sufficient evidence in the record upon which to calculate the loss to plaintiff in rental value."

S. H. Cowan, Allan D. Sanford, I. H. Burney, and C. D. Fahrney, for plaintiff in error.

W. M. Sleeper, A. C. Prendergast, and J. D. Williamson, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). This case has been argued as though it were pending before us upon appeal, and all the matters decided in the court below were open for our examination; but we find that the case is before us on writ of error, and only rulings on matters of law can be reviewed.

The first 20 assignments of error which complain of the rulings of the court below on the pleadings are none of them well taken. because under the agreement all the issues between the parties were to be presented, and on the trial all the evidence offered by each party was received without objection, and was before the court for consideration, so that, if any of the rulings in question were subject to criticism, as charged, no prejudice resulted to either party. This seems to be clear for the further reason that the finding of the court was limited to the one proposition, breach of warranty vel non, and the damages resulting therefrom, which matter was well pleaded. The twenty-first to twenty-eighth, inclusive, and the thirty-sixth to forty-sixth assignments, inclusive, charge errors in findings based upon conflicting evidence, and do not present questions which we are authorized to consider and decide.

[1] The twenty-ninth and thirtieth assignments charge that certain items of damage allowed by the trial court relating to tearing down old building and the erection of a new one are too remote and uncertain and not such consequential damages as under the law the plaintiff below would be entitled to recover in this action. The court found that there was a breach of warranty, and that the plaintiff below had not accepted, and was not obliged to accept, the plant contracted for. The pleadings and the evidence show and the court substantially found that the plaintiff below had incurred the expense and loss of the two items of damage, and that such expense and loss were incidental to and caused by the breach of warranty. The contract could not well have been executed by the defendant below without the tearing down of the old building and the erection of the new, and the expenses and loss necessary must have been within the contemplation of the parties making the contract. In principle and under all the authorities such damages proved with certainty are recoverable. These two assignments are overruled.

The thirty-first assignment further complains that the item of damage allowed for erecting a plate tank building was erroneous, for the reason that the evidence shows that the said building remains upon the plaintiff's premises, and is of value to plaintiff, and, in fact, could be utilized by plaintiff in his business. This assignment raises ques-

tions depending on the evidence which we are bound to assume were passed upon by the court below and found against the defendant, and we think we are concluded by the finding of the court.

The remaining assignments of error attack the allowance of the sum of $13,540 on account of rent of the property for the year 1907, which is one of the items found by the court and included in the judgment, for the reasons (1) that the evidence in the record conclusively shows that the plaintiff operated his whole plant during the season of 1907, his old plant as well as the new plant installed by defendant and operated his old plant to its full capacity, and manufactured and sold the output thereof in the regular course of his business; (2) that the evidence in the record shows that plaintiff operated the said property and plant and utilized the same and produced and sold a large quantity of ice therefrom in the regular course of his business during the season of 1907, and the evidence does not disclose how much ice was so produced and sold, and, under this state of facts, there was no basis to calculate the loss to plaintiff for rental value of the said season of 1907, and therefore there was no sufficient evidence in the record by which to calculate the loss to plaintiff in rental value; (3) because the rental value of the property as sued for by plaintiff herein is not such element of damage as under the law is cognizable in an action of the character brought by the plaintiff herein, and therefore cannot form any proper basis for recovery.

Notwithstanding the wide scope of the pleadings and the evidence adduced, all of which is preserved in the record, the finding of the trial court has limited the action to one for breach of warranty, and, that having been decided in favor of the plaintiff, the damage he can recover must be referable to and flow from the breach.

As to the allowance of $13,540 "for rent of the property, the finding and the judgment are indefinite. Is it for rent of plaintiff's old plant? Or for the ice plant and Corliss engine contracted for and held to be covered by the warranty? Or, again, is it for rent of the whole, the old and the new? In the pleadings the only specific reference to rental value for 1907 is the following:

"Plaintiff would further represent that said new engine and condenser were not installed on time, but when the same were installed, at the expense hereinabove set out and alleged, that the same failed to perform the service which it had been guaranteed and represented that it would do and perform, and said plant failed to produce said 50 tons of merchantable plate ice every 24 hours, and, in addition thereto, to furnish sufficient refrigeration for storage and the making of said 25 tons of can ice as hereinbefore alleged. And said defendant failed to install said plant and have same in running order during said season of 1907, as it had agreed and contracted to do, and that, by reason thereof that plaintiff lost the reasonable rental value of said plant for said season of 1907, which was the sum of $20,000."

Inferentially this must be taken to refer to the ice plate plant, Corliss engine, and condenser, to be installed by the defendant. If we look to the evidence, we find that during the year 1907 the plaintiff used his old plant more or less in connection with the Corliss engine furnished by the Vilter Company, and manufactured and sold the output thereof in the regular course of his business, and that during the

year the ice plant and Corliss engine contracted for were so far installed and used by the plaintiff that a large quantity of ice, though not as much as the guaranty called for, was thereby manufactured, and the same was sold by the plaintiff in his regular course of business. In other words, the plaintiff below had the Corliss engine contracted for in use in connection with the ice plate plant contracted for and the old can plant, and both plants were more or less operated during the season for the use and benefit of the plaintiff.

Under the findings of the trial court, the ice plate plant and the Corliss engine belonged to the defendant below, and in the judgment all the advances of plaintiff below are returned to him with interest and his other proved damages are allowed, so that it would seem by the judgment the plaintiff below without investment of capital therein is allowed a large sum "for rent of the property" that he did not own and of which he had the use, or else "for rent of the property" he did own and of which he had the use and benefit, or both. The only evidence adduced bearing on the rental value of "the property" for the year 1907 is that of the plaintiff below as follows:

"I can't answer 'yes' or 'no,' that I know the reasonable rental value of an ice plant that will make 50 tons of clear merchantable ice erected as the plant was erected by me for the installation of the Vilter machine. I have never heard of a plant—have never had any experience of a plant being rented, and don't know that I ever heard of a plant being rented. The only thing I could answer would be from the money that was invested in it, as I would pass upon any other question as a business man, what it would be worth, as a business man, from the money invested, what it ought to bring. I think I could have an idea of the rental value of the plant. A plant of that character except based upon the returns that I think the investor ought to have out of his money that he has invested in it, upon the basis of the—if he was called to pass upon any other question of that kind, as a business man. Man come to me and ask me what that property ought to be worth, what we want to rent this property; now what is that property worth? what ought it to be worth for rental, what ought this property to be worth? The question I would ask him, what is it capable of doing, what are its profits, what is the money invested, that would be the only way you could get at a question of that kind. I have had no experience with ice plants except to pay bills. The ice business has been before we got into this scrape very profitable. A man renting an ice plant—it would be quite a departure from the usual business, and he would have to find out what the plant was worth, what the rental value was worth. He would predicate that perhaps upon the value of the property invested, and the man especially that was renting the property would want to know something about what basis the figures were made. He would want to know how much he was giving—how much he was giving this man to take the responsibility off his hands of running this plant. He would want to know something about what the man was expected to make out of it; and that is about the only way I could know to get at it. I never heard of an ice plant being rented. I know the profit or profits which that plant has made for a number of years. That is the old plant. The average profit which was made from that old plant for a number of years was between $25,000 and $30,000, perhaps nearer $30,000 than $25,000. But there were years when we lost money. The cause of the loss of money was our ice wars and competition wars between ourselves, selling ice and giving it away just for competition. We had no other regular causes. No bad seasons, nothing of that kind. It was simply ice wars that made us lose money. The investment in the Vilter plant with the buildings and equipment necessary to run it and the value of the ground was over $100,000, have spent over $100,000, that was what was paid for the Diesel engine and what was paid Vilter, what money I absolutely

put into the plant. The two payments were in payment of the Diesel engine and the other payment to the Vilters. That does not include the value of the ground. My last trial balance shows an investment there of over $240,000. The property here is worth $50,000. The Vilter plant uses half of it I should suppose. The ground would be worth about $25,000. I don't think it uses quite half of it, but then it occupies space that we can't use for any other purpose. I don't think it occupies as much as the other. The reasonable rental value of the Vilter for the year 1906 was $20,000. For 1907, if there had been an engine installed which was capable of producing 75 tons of ice per day, the reasonable rental value for that year would be possibly $25,000. I would like to be allowed to make a statement in that regard. In the management of that ice plant in all of those years, my principal business was looking after the finances. So far as the management was concerned, I didn't know anything about it. I know we paid dividends, and that the investment made from $25,000 to $35,000 a year. It made fully $25,000 a year always, when we didn't have those troubles. They were not trade troubles, but fights, ice wars, when we sold the ice for anything we could get for it. In predicating it entirely upon the conditions that surrounded us at that time—these plants are old plants and had become run down to a considerable extent. And with such plants as that we could make $25,000 a year, as we did with those three old plants. If we could do that, what could we expect to make with all these new arrangements that we were contracting for? It is upon that hypothesis that I bank my judgment."

This evidence, given full effect in favor of the plaintiff below, is that the rental value of the property old and new with an engine installed that would produce 75 tons of ice per day (the guaranty was for 50 tons for the plate ice tank and refrigerating power for 25 tons of can ice per day) was possibly $25,000, and taken as given by the witness was speculative, and his estimate is wholly based on contingencies and uncertainties. "Damages must be certain both in their nature and in respect to the cause from which they proceed. Hypothetical or speculative damages are not recoverable." Sedgwick, Elements of Damages, p. 24. See, also, pages 20, 21. "For breach of a warranty the purchaser's measure of damages is the difference between the actual value of the subject of sale and the value which it would have had at the time of the sale, if it had corresponded with the warranty." Sedgwick, Elements of Damages, p. 270.

In Howard v. Stillwell & Bierce Mfg. Co., 139 U. S. 199, 206, 11 Sup. Ct. 500, 503 (35 L. Ed. 147), the general rule that anticipated profits are not recoverable on breach of a contract is recognized, and the court says:

"The grounds upon which the general rule of excluding profits in estimating damages rests are (1) that in the greater number of cases such expected profits are too dependent upon numerous uncertain and changing contingencies to constitute a definite and trustworthy measure of actual damages; (2) because such loss of profits is ordinarily remote and not, as a matter of course, the direct and immediate result of the nonfulfillment of the contract; (3) and because most frequently the engagement to pay such loss of profits, in case of default in the performance, is not a part of the contract itself, nor can it be implied from its nature and terms. * * * But it is equally well settled that the profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness, or where from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the time it was entered into."

In Ramsey et al. v. Tully et al., 12 Ill. App. 470, we find:

"It is quite unnecessary to multiply the citation of cases. The principle which underlies them all is that where one of two contracting parties, not being himself in default, suffers a loss by the wrongful default of the other, he ought to receive full and just compensation therefor. His recovery, however, is to be limited to such damages, in the language of Baron Alderson in Hadley v. Baxendale, 'as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from the contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as a probable result of the breach of it.' This definition excludes all such damages as are remote or merely speculative."

The attempts to discriminate between an estimated rental value of property not delivered in time or not in full compliance with the contract and anticipated profits have been frequent, and some have been successful.

Griffin v. Colver, 16 N. Y. 489, 69 Am. Dec. 718, a leading case on the subject, held:

"Upon the breach of a contract to deliver at a certain day a steam engine built and purchased for the purpose of driving a planing mill and other definite machinery, the ordinary rent or hire which could have been obtained for the use of the machinery whose operation was suspended for want of the steam engine may be recovered as damages."

Consumers' Pure Ice Co. v. Jenkins, 58 Ill. App. 519. In a suit for balance due on contract for ice plant, and there was delay in completion and delivery, the vendee was allowed to recoup damages for the delay based on rental value. Maryland Ice Co. v. Arctic Ice Machine Mfg. Co., 79 Md. 103, 29 Atl. 70, is to the same effect. Standard Supply Co. v. Carter & Harris, 81 S. C. 181, 62 S. E. 150, 19 L. R. A. (N. S.) 155. "Held, the failure to deliver an engine at the time agreed upon by which a purchaser is deprived of putting in operation his cotton-ginning outfit for a time, the manufacturer having been notified of all the facts, the purchaser is entitled to a fair-rental value of the plant for the time it was idle, because of manufacturer's default." Tompkins v. Dallas Cotton Mills, 130 N. C. 347, 41 S. E. 938, is to the same effect. Paola Gas Co. v. Paola Glass Co., 56 Kan. 614, 44 Pac. 621, 54 Am. St. Rep. 598. In a suit on a contract to furnish gas to run a glass factory damages for breach allowed based on the rental value of the property to be operated while it was idle. In Dixon Woods Co. v. Phillips' Glass Co., 169 Pa. 167, 32 Atl. 432, damages for breach of contract held to include fair compensation for the use of the plant, while deprived of its use by plaintiff's breach. In Wall v. Ice & Cold Storage Co., 112 Mo. App. 659, 87 S. W. 574, this rule was approved. If the plaintiffs failed to deliver the cans mentioned in the time agreed on, the amount of damages to which the defendant is entitled is the reasonable value of the use of the cans from the time they should have been delivered until the date of this delivery. In Hooks' Smelting Co. v. Planters' Compress Co., 72 Ark. 292, 79 S. W. 1052, in regard to rental value, it was held:

"Assuming that the defendant made out a case for special damages, under the law those damages should have been limited to the reasonable rental value

of so much of the compress plant as was stopped through the failure of the plaintiff to perform his contract."

In Livermore v. Union S. & C. Co., 105 Tenn. 187, 58 S. W. 270, 53 L. R. A. 482, the Supreme Court of Tennessee approved this charge:

"But if you find that it was in the contemplation of the parties that, in the event of default by the defendant to furnish suitable and proper machinery, the loss of the use of the compress would necessarily ensue, and if you find as a necessary result of the explosion due to the negligence of the defendant in furnishing a defective cylinder that the plaintiff was deprived of the use of the compress, plaintiff would be entitled to recover the rental value of the compress, as shown by the evidence during the period it was so deprived of its use."

The digests will show many more cases on the same line, but the writer has found none substantially differing from the above in principle, and none where the vendee was allowed rent for any property when he was not delayed in using the same. If we assume in the case in hand that the rent allowed was for the use the vendee might have made of the plant contracted for if it had filled the guaranty, and we consider the undisputed facts as shown by the record, we have a case of entering the field of speculation to find damages based on "numerous uncertain and changing contingencies" and which damages may well be held remote, and not contemplated by the plaintiff in error at the time of the contract.

[2] The record presents a case where the plaintiff in error installed an ice plant for the defendant in error with a guaranty that it would produce 50 tons of plate ice per day. It fell short by some few tons of the production, but it was worked the whole season for the use and benefit of the defendant in error. For the breach of the guaranty the contract is practically rescinded, the plaintiff in error is left with an ice plant and engine at his own risk on defendant in error's land, and is, besides, condemned to refund all advances with interest and to pay large sums for damages, more or less certainly proved, and, in addition, to pay the defendant in error in the guise of rent the sum of $13,540, more than half the contract value of the ice plant installed, as what he might have made if the plant had come up to the guaranty and he could have rented the same. If the defendant in error had accepted and paid for the ice plant and engine installed, his damages for breach of the guaranty, under some of the cases above cited, might have included diminished rental value of the plant if the evidence had been certain. An entirely different case is presented. Defendant in error does not accept nor pay for the ice plant and engine. All his proved proximate damages are allowed. He had the use of the plant without paying rent through the season, and we find no evidence in the record that he could have sold more ice than that which was actually produced by the plant and sold by him to his trade; and this would seem to leave no just claim for rental value of machinery on the ground of deprivation of the use of same nor for delay or hindrance.

In addition, we find that the only evidence before the court on which a finding of any specific sum as rental value could be based was in-

sufficient to support any finding for rent; the same being "speculative and based on numerous circumstances and changing contingencies."

The thirty-fourth and thirty-fifth assignments of error are well taken, and a reversal of the judgment of the Circuit Court necessarily follows, unless the amount of $13,450 "for rent of property" is eliminated.

The judgment of the Circuit Court is reversed and the cause is remanded, with instructions to grant a new trial, unless within 30 days from filing the mandate of this court the defendant in error shall enter a remittitur on the judgment for $13,450, in which case the judgment as so reduced shall stand affirmed.